IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MARTY LAMAR BAIRD, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-10 |
| v. | |
| MRS. DAVIS, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants Angus Barefoot, Davis, Ricky Stone, and Upton's Motion for Summary Judgment, construed as a Motion to Dismiss.[1] Doc. 28. Plaintiff filed a Response, and Defendants filed a Reply. Docs. 44, 49. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' construed Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE**

---

[1] Defendants' Motion is docketed as a Motion for Summary Judgment; however, Defendants also argue dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies. See Doc. 28. In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c)"). Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75. Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b). Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)"). For this reason, I construe this portion of Defendants' Motion for Summary Judgment as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff, an inmate proceeding pro se, filed this suit against Defendants asserting claims under 42 U.S.C. § 1983 related to an alleged lack of medical care while at Coffee Correctional Facility ("CCF").[2] Doc. 1. Specifically, Plaintiff alleges Defendants ignored his medical profiles when he arrived at CCF. Further, Defendant Davis confiscated Plaintiff's back and knee braces, which he needed, and later the facility lost his braces. Id. at 5. Plaintiff continually tried to inform Defendants about the need for his braces but was ignored. Id. at 5, 9. Because Plaintiff has been deprived of his braces, he has experienced significant pain. Id. at 5–6. After conducting frivolity review, the Court allowed Plaintiff to proceed on his Eighth Amendment deliberate indifference to a serious medical need claim against Defendants. Docs. 9, 11. Plaintiff seeks both monetary and injunctive relief.[3] Doc. 1 at 2–3, 6.

Defendants now move for summary judgment. Doc. 28. First, Defendants contend the undisputed material facts show they were not deliberately indifferent to Plaintiff's medical needs. Further, Defendants contend Plaintiff failed to exhaust his administrative remedies prior to filing suit, which requires his action to be dismissed. Id. Plaintiff opposes Defendants' Motion.[4] Doc. 44.

---

[2] Plaintiff is currently incarcerated at Coastal State Prison. Doc. 35.

[3] Plaintiff moved for preliminary injunctive relief, which the Court denied. Docs. 38, 48.

[4] Plaintiff states he needs counsel to oppose Defendants' Motion. Doc. 44 at 1. As the Court has previously explained, in this civil case, Plaintiff is not entitled to counsel and Plaintiff has not made a showing that the appointment of counsel is necessary. Docs. 30, 31, 34. Accordingly, to the extent Plaintiff's Response is also construed as a request for the Court to appoint counsel, it is **DENIED**.

2

**DISCUSSION**

The undersigned must now determine how to address Defendants' construed Motion to Dismiss for Plaintiff's failure to exhaust his administrative remedies.

**I.    Plaintiff's Failure to Exhaust**

   **A.    PLRA's Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).

Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga.

4

Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure that is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v.

Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### C. Applying Turner

#### 1. *CCF's grievance policy.*

There is a grievance process at CCF that is applicable to and utilized for all inmates at the Georgia Department of Corrections ("GDC"). Doc. 28-8 at 2–3. The grievance process includes

7

two steps inmates must follow.  At Step One, inmates must submit an original grievance.  At Step Two, inmates must submit a Central Office Appeal.  <u>Id.</u> at 3.  Under the grievance procedure, prisoners must file a grievance (i.e., complete Step One) no later than 10 days from the date he knew, or should have known, of the facts giving rise to grievance.  <u>Id.</u>  However, this deadline may be considered for an extension for good cause.  Doc. 28-9 at 9.

The Warden has 40 days to respond to an inmate's grievance.  <u>Id.</u> at 12.  If the inmate is dissatisfied with the response of CCF officials, he may file an appeal to the GDC's Central Office in Atlanta.  Doc. 28-8 at 3.  An inmate has seven days to file an appeal once he receives the Warden's response.  Doc. 28-9 at 15.  CCF maintains records and information related to the administrative grievances filed by inmates, including any appeals to the GDC Central Office.  Doc. 28-8 at 3.

### 2. *Plaintiff failed to exhaust his administrative remedies.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  <u>Turner</u>, 541 F.3d at 1080–82.  Plaintiff states he filed a grievance at CCF, which Defendants do not dispute.  Doc. 1 at 8; Doc. 28-1 at 8.  Further, at the time he filed his Complaint, Plaintiff admits he had not filed an appeal.  Doc. 1 at 9.

Plaintiff's and Defendants' accounts do not conflict.  Plaintiff and Defendants all acknowledge Plaintiff filed a grievance related to his medical care but did not appeal that grievance.  Plaintiff filed Grievance Number 300984 on December 23, 2019.  Doc. 28-11 at 4.  This grievance addressed Plaintiff's medical issues and, specifically, the issues he was having with his back and knee braces.  <u>Id.</u>  Before receiving a response to that grievance, on January 14,

8

2020, Plaintiff filed his Complaint.[5]  Doc. 1 at 12.  On February 7, 2020, Plaintiff received the Warden's response to his grievance.  Doc. 28-11 at 6.  Thus, the undisputed facts show Plaintiff filed his Complaint before he received the Warden's response and before he appealed the denial of his grievances.  Plaintiff offers no explanation as to why he filed this suit before receiving a response or filing an appeal.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92.  Plaintiff plainly failed to comply with CCF's grievance policy and deadlines.  To properly exhaust, Plaintiff must exhaust their administrative remedies before filing a federal civil action.  Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.").

Plaintiff did not properly exhaust because he did not wait for the response to Grievance Number 300984 or properly appeal before suing.  Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); Sewell, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted)).

---

[5]    Though the Court received Plaintiff's Complaint on January 17, 2020, Plaintiff's Complaint is signed January 14, 2020.  Doc. 1 at 12.  The applicable date for exhaustion purposes is the date the plaintiff signed the complaint and not the filing date.  Daker v. Owens, No. 6:14-CV-47, 2021 WL 725668, at *4 (S.D. Ga. Feb. 22, 2021) (citing Merilien v. Caldwell, No. 3:18-CV-056, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) ("Concluding a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.")).

Therefore, under Turner step one, I conclude Plaintiff failed to exhaust his available administrative remedies before bringing suit.  Consequently, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[6]

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[6]     Because Plaintiff's claims are due to be dismissed for failure to exhaust his administrative remedies, the undersigned declines to address Defendants' additional summary judgment arguments.

Based on the above analysis of Defendants' construed Motion to Dismiss and Plaintiff's lack of opposition thereto, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' construed Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint.  Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 10th day of June, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA